UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NATHAN DURAPAU                          *
                                        *   CIVIL ACTION NO. _____
*versus*                                *
                                        *   JUDGE _____
JUSTIN K. McLIN, KEIWANA S.             *
WILKINSON, and VARIOUS                  *   MAGISTRATE _____
UNKNOWN OFFICERS OF                     *
JEFFERSON PARISH SHERIFF'S              *   JURY TRIAL DEMANDED
OFFICE                                  *
* * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff Nathan Durapau who

asserts the following allegations against defendants Justin K. McLin, Keiwana S. Wilkinson, and

other unknown Officers to be named later, all of whom are jointly and severally liable, and at all

relevant times were employed by the Jefferson Parish Sheriff's Office ("JPSO"):

### INTRODUCTION

### 1.

This case seeks to remedy JPSO's brutal and unnecessary beating of Nathan Durapau.  On

June 16, 2020, Mr. Durapau was arrested at the conclusion of a protest against police brutality in

Gretna, Louisiana.  Mr. Duapau and the other demonstrators specifically were marching to protest

the deaths of several young men in recent encounters with Officers in the New Orleans area and

to demand that Officers of the JPSO begin using body cameras when on duty.  Following his arrest,

Mr. Durapau's arresting Officers obscured him from public view by placing him in the back of a

gutted van—where they violently attacked him, punching and slapping him in the face while his

hands were cuffed behind his back.  That Mr. Durapau was restrained with his hands behind his

back—allowing for no pretense he posed any kind of threat—as the Officers pummeled him makes

the attack even more egregious, and flagrantly unconstitutional.  Throughout the duration of the

attack, the arresting Officers verbally taunted Mr. Durapau, questioning his manhood and baiting him to fight back—no doubt hoping he would, to serve as a perverse justification for their beating. As a result of the Officers' unjustified brutality, Mr. Durapau suffered painful physical injuries, including a broken nose, and he continues to struggle with the emotional aftereffects of the trauma.

## 2.

Unfortunately, the violence Mr. Durapau suffered at the hands of the police is far from an isolated occurrence in America.[1]  Following the murder of George Floyd by a Minneapolis police officer, a national outcry for justice manifested numerous demonstrations and protests in Louisiana and throughout the country.  The June 16, 2020, demonstration Mr. Durapau attended was part of this national outcry.  Far too often, these demonstrations *against* police brutality were met with further police brutality.[2]

## 3.

This is a straightforward case about brazen police brutality.  It does not involve a split-second decision made by police officers under high-stress conditions.  There is no margin of error to evaluate here: physically beating and verbally taunting a restrained demonstrator who is already in custody in the back of an unmarked police van is unjustifiable and unacceptable under any and all circumstances.  This attack violated Mr. Durapau's clearly established constitutional rights

---

[1]  *See, e.g.*, Amanda Taub, *From Colombia to U.S., Police Violence Pushes Protests Into Mass Movements*, The New York Times, May 19, 2021, https://www.nytimes.com/2021/05/19/world/americas/colombia-protests-police.html.

[2]  *See, e.g.*, Kim Barker, Matt Baker, and Ali Watkins, *Reports Hammer Police Responses to 2020 Protests*, The New York Times, Mar. 21, 2021, at A1; Eric Boehm, *Nation's Cops Seem Determined To Demonstrate Why People Are Protesting Them in the First Place*, Reason, May 31, 2020, https://reason.com/2020/05/31/nations-cops-seem-determined-to-demonstrate-why-people-are-protesting-them-in-the-first-place/.

under the Fourth and Fourteenth Amendments of the United States Constitution, as well as his civil rights under 42 U.S.C. § 1983, for which Mr. Durapau now seeks damages.

## PARTIES

### 4.

Plaintiff Nathan Durapau is a citizen of Louisiana who is domiciled in Orleans Parish.

### 5.

Officer Justin K. McLin was, at all relevant times, employed by JPSO.  He is sued in his individual capacity.

### 6.

Officer Keiwana S. Wilkinson was, at all relevant times, employed by JPSO.  He is sued in his individual capacity.

### 7.

Mr. Durapau also pursues this action against various unknown JPSO Officers, who at all relevant times and along with Officers McLin and Wilkinson, are jointly and severally liable and will be named later should their identities be uncovered during discovery.

### 8.

At all times relevant to this complaint, all defendants acted under the color of state law.

## JURISDICTION AND VENUE

### 9.

The Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, and 1367.

**10.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mr. Durapau's claims occurred in this District.

**FACTUAL ALLEGATIONS**

**11.**

At all times relevant to this complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

**12.**

On the afternoon of June 16, 2020, Nathan Durapau attended a protest against police brutality at the corner of Gretna Boulevard and Manhattan Street in Jefferson Parish. The protest was attended by family members of past victims of police brutality.

**13.**

Following the protest, Mr. Durapau and a companion were leaving the area along Gretna Boulevard, near the JPSO. At that time, an unmarked white van began speeding toward the two. Mr. Durapau and his companion began to run for their safety but stopped when they saw other vehicles approaching. Multiple men who identified themselves as JPSO Officers exited the van and began to run toward Mr. Durapau and his companion. Upon information and belief, two of the Officers were McLin and Wilkinson, each of whom is listed as Mr. Durapau's arresting Officer.

**14.**

One of the Officers from the white van grabbed Mr. Durapau's companion and threw him up against a police vehicle. Mr. Durapau attempted to pull the Officer off his companion but was grabbed by a second Officer. That Officer threw Mr. Durapau to the ground, handcuffed his hands behind his back, and informed him that he was under arrest. The Officers forcibly removed Mr. Durapau's mask, which he had been wearing consistent with Louisiana law to prevent the spread

of COVID-19.  The Officers then deposited Mr. Durapau and his companion in the back of the white van.  In total, six Officers joined Mr. Durapau and his companion in the back of the van.

**15.**

The back seats of the van had been removed and replaced by a long bench running along the side of the van from the driver's seat to the back.  The Officers placed Mr. Durapau and his companion on the bench.  The van then began to drive, at a high rate of speed, along Gretna Boulevard.  At no point did the Officers use seat belts to secure Mr. Durapau or his companion in the van, and both the Officers and the arrestees had difficulty maintaining their balance because of the van's movements.

**16.**

While in the van, one of the Officers began repeatedly punching and slapping Mr. Durapau in the face.  This Officer punched Mr. Durapau a total of five to six times during the five-minute car ride, all while Mr. Durapau's hands were restrained behind his back by handcuffs. During the attack, other Officers verbally accosted Mr. Durapau and his companion with vulgarities, suggesting that they were cowards for not fighting back.  Then, while the van was still moving, one of the Officers, without warning, pulled out a knife.  Mr. Durapau feared that the Officer would stab him either intentionally or simply by losing his balance in the fast-moving van.  At this moment, Mr. Durapau feared for his life. The Officer eventually used the knife to cut Mr. Durapau's hip pack from his body.

**17.**

After a fast-paced, five-minute ride, the van came to a halt and the Officers led Mr. Durapau and his companion out for processing.  Upon exiting the van, Mr. Durapau realized that the group was at the JPSO, only a short distance from where they were arrested.  The Officers' joyride was

completely unnecessary given the short distance between the arresting and booking locations. Worse, the duration of the ride and speed of the van indicate that this trip was no direct ride to the Sheriff's Office, but instead a deliberately extended trip to allow for the assault to happen. Mr. Durapau was charged with resisting police force, battery on a police officer and interference with a law enforcement investigation.  He was released on bail the next day.

**18.**

Immediately following Mr. Durapau's release from custody, he sought medical attention at University Medical Center of New Orleans' Emergency Clinic for the injuries he suffered at the hands of an Officer while he was handcuffed inside the van.  Mr. Durapau was diagnosed with a head contusion and a nasal fracture.  As a result of these injuries, Mr. Durapau experienced pain and breathing problems, which he continues to suffer.  He has also experienced severe emotional distress as a result of the violent conduct of defendants, which has strained his personal relationships and caused him to seek professional counseling.  Indeed, for weeks following the assault, Mr. Durapau was too paranoid to leave his home, fearful that the Officers would find him and assault him once more.  Although this paranoia eventually subsided, overall anxiety, stress, depression, and hyper-vigilance remained.  It is only recently that Mr. Durapau has begun to feel emotionally recovered.

**CAUSES OF ACTION**

**Count One: 42 U.S.C. § 1983 Excessive Force Claim**

**19.**

Mr. Durapau realleges and incorporates all preceding paragraphs of his complaint.

**20.**

Defendants' use of unreasonable, unnecessary, and excessive force, and the failure to prevent the use of the same by other bystander Officers, violated Mr. Durapau's clearly established constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.  Defendants' use of excessive force was not objectively reasonable in light of the circumstances.

**21.**

Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Durapau's established constitutional rights.

**22.**

Defendants' misconduct directly and proximately caused Mr. Durapau to suffer injury including bodily injury, pain and suffering, shock, extreme emotional distress, and humiliation.

**Count Two: Battery (State Law Claim)**

**23.**

Mr. Durapau realleges and incorporates all preceding paragraphs of his complaint.

**24.**

Defendants used an unreasonable and unnecessary amount of force after arresting Mr. Durapau.

**25.**

Defendants intended to cause harmful and offensive contact with Mr. Durapau.

**26.**

Defendants repeatedly slapped and punched Mr. Durapau while Mr. Durapau's hands were restrained in handcuffs.

**27.**

Defendants had no reason to believe that Mr. Durapau would become violent or that he was a danger to them.

**28.**

Mr. Durapau did not try to flee after being handcuffed and there was no risk of Mr. Durapau fleeing while he was restrained in the van.

**29.**

Defendants did not face danger from anyone else in the van.

**30.**

Defendants were stronger than Mr. Durapau and were equipped with pistols, tasers and a knife.

**31.**

Defendants' use of force directly and proximately caused Mr. Durapau to suffer injury including bodily injury, pain and suffering, shock, extreme emotional distress, and humiliation.

**Count Three: General Negligence (State Law Claim)**

**32.**

Mr. Durapau realleges and incorporates all preceding paragraphs of his complaint.

**33.**

Each Defendant owed a duty to Mr. Durapau to stop the other Officer from using an excessive amount of force on Mr. Durapau in his presence or otherwise within his knowledge.

**34.**

Defendants had a duty to choose a course of action which was reasonable under the circumstances.

**35.**

Defendants breached those duties.

**36.**

Defendants' breach of their duty was a cause-in-fact of Mr. Durapau physical injuries and severe emotional distress. As a result of the conduct of defendants, Mr. Durapau has difficulty with personal relationships and has sought professional counseling.

**37.**

Defendants' conduct directly and proximately caused Mr. Durapau to suffer physical and emotional injury.

**Count Four: Intentional Infliction of Emotional Distress (State Law Claim)**

**38.**

Mr. Durapau realleges and incorporates all preceding paragraphs of his complaint.

**39.**

Defendants' conduct, including repeatedly slapping and punching Mr. Durapau while he was restrained, was extreme and outrageous. Defendants' conduct is beyond the tolerance of reasonable members in the society.

**40.**

Defendants intended that their conduct would cause Mr. Durapau severe emotional distress or knew that their conduct was certain or substantially certain to cause Mr. Durapau severe emotional distress.

**41.**

Mr. Durapau has suffered severe emotional distress which has affected his personal relationships and day to day life.

**42.**

Defendants' conduct directly and proximately caused Mr. Durapau to suffer emotional injury.

**Count Five: Assault (State Law Claim)**

**43.**

Mr. Durapau realleges and incorporates all preceding paragraphs of his complaint.

**44.**

An Officer threatened to cause physical injury to Mr. Durapau when the Officer pulled a knife, a dangerous weapon, and without warning, in a moving vehicle, physically removed an article from Mr. Durapau's person.

**45.**

The Officer had the ability to cause physical injury.

**46.**

Mr. Durapau feared for life when the Officer moved toward him with a knife, in a vehicle moving at a high rate of speed.

**47.**

Defendants' assault directly and proximately caused Mr. Durapau to suffer emotional injury.

**JURY DEMAND**

Mr. Durapau demands a jury on any causes of action triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Nathan Durapau requests that this Court enter judgment:

     i.    In his favor, and against defendants Justin K. McLin, Keiwana S. Wilkinson, and other unknown Officers to be named later;

     ii.    Awarding compensatory damages in an amount to be determined at trial, costs, attorneys' fees, and other expenses, including prejudgment and post-judgment interest;

     iii.    Awarding special damages as to all Defendants;

     iv.    Awarding punitive damages as to all Defendants sued in their individual capacity; and

     v.    Granting any other relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Shaun P. McFall*
Michael A. Balascio (T.A.), 33715
Shaun P. McFall, 37225
Robert J. Dressel, 35757
Whitney M. Antoine, 38660
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana  70112
Telephone:  504/589-9700
Facsimile:  504/489-9701
mbalascio@barrassousdin.com
smcfall@barrassousdin.com
rdressel@barrassousdin.com
wantoine@barrassousdin.com

Nora Ahmed
(*pro hac vice application forthcoming*)
ACLU FOUNDATION OF LOUISIANA
1340 Poydras St., Suite 2160
New Orleans, Louisiana 70112
Telephone: (504) 444-6046
nahmed@laaclu.org

*Attorneys for plaintiff Nathan Durapau*